UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MYKHAILO STETSIUK**,<br><br>Plaintiff,<br><br>v.<br><br>**MARIO MESQUITA, et al.**,<br><br>Defendant. | Case No. 24-cv-62 (CRC) |

## MEMORANDUM OPINION

Plaintiff Mykhailo Stetsiuk is a citizen of Ukraine awaiting a decision on his F1 student visa application. Stetsiuk filed the application in April 2023 and appeared for a visa interview at the U.S. Embassy in Vienna, where he resides, in May 2023. At the end of the interview, Stetsiuk's visa application was refused and placed in administrative processing. He has received no updates on its status since then. Stetsiuk initiated this action in January 2024, claiming that the government has unreasonably delayed action on his application and seeking to compel the defendants to conclusively decide it. The government has moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Because Stetsiuk has not plausibly alleged an unreasonable delay in adjudicating his visa application, the Court will grant the government's motion and dismiss the complaint.

### I. Background

The Court draws the following background from the allegations in Stetsiuk's Petition for Writ of Mandamus and Complaint for Injunctive Relief ("Compl.").

Stetsiuk, a Ukrainian citizen, resides in Vienna, Austria, with his wife, Oleksandra Pidgurska, and two children. Compl. ¶¶ 3, 9. Stetsiuk and his family were forced to relocate from Ukraine to Austria "for safety" after the Russia-Ukraine war began. Id. ¶ 3; Opp'n at 5. In

April 2023, Stetsiuk filed an F-1 visa application. Compl. ¶ 1. An F-1 visa allows foreigners to enter the United States as full-time students at accredited colleges or universities. Students and Employment, USCIS, https://www.uscis.gov/working-in-the-united-states/students-and-exchange-visitors/students-and-employment (last visited Feb. 5, 2025). One month later, in May 2023, a consular officer at the U.S. Embassy in Austria interviewed Stetsiuk in connection with his visa application. Compl. ¶ 14. After the interview, the officer designated Stetsiuk's application as "refused" and placed the application into "administrative processing." Id. ¶ 15; Opp'n, Ex. A ("Administrative Processing Ltr."); Mot. to Dismiss, Ex. A ("McNeil Decl.") ¶ 4; 8 U.S.C. § 1201(g).[1]

Stetsiuk alleges that he has suffered "significant personal, financial, and emotional hardship due to the delay." Compl. ¶ 1. Stetsiuk was invited to join the Columbia Business School and London School of Business Global Executive MBA program after a year of preparation, funded in part by a $30,000 scholarship he earned from Columbia Business School. Id. ¶ 2. The visa delay has "disrupted [Stetsiuk's] participation in essential parts of the curriculum," however, including core courses and business simulations held at Columbia's New York City campus. Id. Although Stetsiuk was able to complete his first year of business school, "his physical presence at Columbia is essential" in the upcoming year if he wishes to earn his degree. Id.

---

[1] Although the Complaint does not specify that Stetsiuk's application was refused, that information is reflected in a letter from a consular officer attached to his opposition, which Stetsiuk asks the Court to consider. Administrative Processing Ltr. The letter does not include a date, but the declaration attached to the government's Motion to Dismiss clarifies that the consular officer refused Stetsiuk's application on the same day as his interview. McNeil Decl. ¶ 4. The Court may consider both these documents "upon which the plaintiff's complaint necessarily relies," even though they were not referenced in or attached to the complaint. Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (citation omitted).

The visa delay has also impacted Stetsiuk's family.  Pidgurska, who is disabled, has put her "professional and personal aspirations are on hold" due to the delay.  Id. ¶¶ 2, 3.  Stetsiuk's thirteen-year-old and five-year-old children have also had to give up "various activities and resources" because of the family's financial constraints.  Id. ¶ 3.  Stetsiuk also claims to have suffered "financial hardship" due to the delay because he has spent $218,000 in business school fees, which "posed a significant investment" for him and his family.  Id. ¶ 4.  Though Stetsiuk's complaint is not a model of clarity, he may intend to imply that these fees will not be refunded if he cannot complete his MBA program.

In January 2024, Stetsiuk filed this action against the Deputy Chief of Mission of the U.S. Embassy in Austria, Mario Mesquita, and then U.S. Secretary of State, Anthony Blinken, in their official capacities.  Id. ¶¶ 10–11.[2]  He contends that the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1), and the Mandamus Act, 28 U.S.C. § 1361 *et seq*, require the defendants to adjudicate his visa applications without unreasonable delay and seeks a court order compelling them to do so.  Id. ¶¶ 13–33.  The government has moved to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

**II.   Legal Standards**

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court "must treat the complaint's factual allegations as true[] and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  Giliana v. Blinken, 596 F. Supp. 3d 13,

---

[2] Stetsiuk filed his complaint before the change in administrations, and thus named individuals as Defendants in their official capacities who no longer hold office.  As appropriate, the Court substitutes the individuals currently holding these offices as named Defendants.  See Fed. R. Civ. P. 25(d).  Specifically, the Court substitutes Secretary of State Marco Rubio in place of Secretary Blinken.

17 (D.D.C. 2022) (Cooper, J.) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint nor accept a plaintiff's legal conclusions as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). But on a 12(b)(6) challenge, the defendant bears the burden, and "dismissal is inappropriate unless the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Browning, 292 F.3d at 242 (citation omitted).

### III. Analysis

The government advances five arguments in support of its motion to dismiss: (1) Stetsiuk lacks standing; (2) the Secretary of State is an improper party; (3) the doctrine of consular nonreviewability bars judicial review of the delay; (4) the complaint fails to identify a discrete, non-discretionary duty on the part of the defendants; and (5) the complaint fails to state a plausible claim of unreasonable delay. Because Stetsiuk fails to plausibly allege an unreasonable delay, the Court will grant the government's motion to dismiss on that basis.

#### A. Standing

The Court will first address the government's argument that Stetsiuk lacks standing to pursue his claims. In order to establish standing, a plaintiff must demonstrate (1) that they have suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

The government argues that Stetsiuk has suffered no concrete injury sufficient to support Article III standing because "allegations of delay in the State Department's processes are insufficient themselves to establish an injury in fact[.]" Mot. to Dismiss at 8. And, it says, "an inability to travel to the United States" is not a harm recognized by common law, statute, or the Constitution. Id.

This argument is "intricately intertwined with [the government's] other jurisdictional argument based on the doctrine of consular nonreviewability," which the Court will discuss further in Section III.B. Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 281 (D.D.C. 2016). For present purposes, the Court observes that Stetsiuk has "suffered an injury in fact: the failure to receive final decisions on [his] [visa] application[] within a reasonable period." Id. at 282. The Court therefore agrees with the courts in this District that have held that plaintiffs challenging unreasonable delays in their visa applications "possess constitutional standing." Khan v. Blome, No. 22-cv-2422 (JEB), 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022) (collecting cases).

The government next argues that the requested relief cannot redress Stetsiuk's injury because he has not demonstrated that ordering further adjudication "will result in anything but another refusal" of his application. Mot. to Dismiss at 14. The government asserts, as well, that Secretary Rubio should be dismissed from this case "because he has no role in re-adjudicating the Visa Application at issue" and therefore "cannot adjudicate or re-adjudicate" Stetsiuk's visa application. Mot. to Dismiss at 5. The Court interprets this argument, too, as a redressability challenge. "For reasons that have already been well ventilated in prior cases," the Court rejects both the government's redressability arguments. Giza v. Blinken, No. 23-cv-1641 (CRC), 2024

WL 3967284, at *2 (D.D.C. Aug. 27, 2024); see also Azeez v. Murphy, No. 23-cv-1947 (CRC), 2024 WL 3924565, at *2 (D.D.C. Aug. 23, 2024).

First, as just explained, Stetsiuk seeks only a final decision on his visa application. A court order directing Secretary Rubio to expedite Stetsiuk's application, whether or not his visa is ultimately approved, would thus redress his claimed injuries "caused by the Government's failure to decide." Nine Iraqi Allies, 168 F. Supp. 3d at 282.

Second, Secretary Rubio is not an improper defendant. As it often does, the government relies on Baan Rao Thai Restaurant v. Pompeo, 985 F.3d 1020 (D.C. Cir. 2021), to challenge the Secretary's inclusion in this suit. There, the D.C. Circuit held that the Immigration Nationality Act ("INA"), 8 U.S.C. § 1101 et seq., "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" 985 F.3d at 1204 (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).

But as the Court has explained before, "[c]ontrol over a consular officer's visa *determinations* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her." Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (emphasis in original); see, e.g., Azeez, 2024 WL 3924565, at *2. For that reason, "[c]ourts in this jurisdiction [have] routinely reject[ed] the same argument that Defendants have raised here" and held that the Secretary of State is a proper defendant in unlawful-delay cases involving foreign consulates. Fakhimi v. Dep't of State, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); see also, e.g., Ramirez v. Blinken, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (Cooper, J.); Lee v. Blinken, No. 23-cv-1783 (DLF), 2024 WL

6

639635, at *3 (D.D.C. Feb. 15, 2024); Babaei v. United States Dep't of State, No. 23-cv-1244 (TJK), 2024 WL 1178453, at *4 (D.D.C. Mar. 19, 2024).

Because the Secretary of State "oversees [the State Department]," which is "responsible for adjudicating visa applications," Compl. ¶ 11, and "because consular nonreviewability does not stop the Secretary of State from exerting control over the timing of visa adjudications," Giza, 2024 WL 3967284, at *2, he is a proper defendant in this case. Accordingly, Stetsiuk has standing to pursue his claim against both named defendants.

B. Consular Nonreviewability

The Government next argues this lawsuit is barred by the doctrine of consular nonreviewability, which "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao, 985 F.3d at 1024; Mot. to Dismiss at 14–20. Once again, the Court disagrees. See Giza, 2024 WL 3967284, at *3–4; Azeez, 2024 WL 3924565, at *3; Shabestary v. Sanders, No. 24-cv-362 (CRC), 2024 WL 5118229, at *3–4 (D.D.C. Dec. 16, 2024).

As in a host of other cases, the Government again points for support to Baan Rao and to that case's subsequent affirmation in Department of State v. Muñoz, 144 S. Ct. 1812, 1820 (2024). See Mot. to Dismiss at 14–16; 1st Notice of Supp. Auth., ECF No. 9, at 1–2. Neither Muñoz nor Baan Rao control here, however. In Muñoz, the Court held that the doctrine of consular nonreviewability applies when the plaintiff challenges "the executive officer's decision to admit or to exclude a[] [noncitizen]." 144 S. Ct. at 1820 (citation and quotation marks omitted). As already explained, Stetsiuk does not challenge the government's decision to admit or exclude him or to refuse his petition and place him in administrative processing. Rather, he contends that the agency has unreasonably delayed its completion of administrative processing.

7

And as the Court has observed before, the doctrine of consular nonreviewability does not bar challenges to timing as opposed to substance. See Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (Cooper, J.); see also Giliana, 596 F. Supp. 3d at 18–19; Ramirez, 594 F. Supp. 3d at 87.

In addition, numerous courts in this district, including this one, have made clear that the doctrine of consular nonreviewability applies only to "final visa determinations." Giliana, 596 F. Supp. 3d at 18 (quoting Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020)). But "applications in administrative processing 'have not been finally refused.'" Giza, 2024 WL 3967284, at *3 (quoting Nine Iraqi Allies, 168 F. Supp. 3d at 292).[3] Stetsiuk's application is "still under administrative processing" to assess his visa eligibility, so "there has been no final visa determination." Giza, 2024 WL 3967284, at *3.

The Court acknowledges that one court in this district recently diverged from the pack, holding that consular nonreviewability applies to cases in administrative processing because, in its view, courts lack authority to order "additional processing" or demand a "reexamination" of a rejected visa application. Yaghoubnezhad v. Stufft, No. 23-cv-03094 (TNM), 2024 WL 2077551, at *11 (D.D.C. May 9, 2024). This Court respectfully disagrees. Stetsiuk is "not asking for a reevaluation of any determination." Giza, 2024 WL 3967284, at *3. Instead, he requests that the government end his "administrative limbo" with a timely, final decision. Id. In this context, consular nonreviewability has no application and does not bar the Court's review.[4]

---

[3] The government contends "that the courts in this District have erred when they apply the reasoning of Nine Iraqi Allies to all other visa applications for which Congress has not set a specific timetable." Mot. to Dismiss at 17. But regardless of whether there is a statutory timetable for processing Stetsiuk's visa application, the point stands that he seeks nothing more than a timely decision.

[4] As the Court has explained in prior opinions, Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), does not change this conclusion because it

C. <u>Discrete Action Requirement</u>

Next, the government asserts that Stetsiuk's complaint fails to state a claim for unreasonable delay under the APA or the Mandamus Act. Mot. to Dismiss at 21–25. "The standards for reviewing agency inaction—including visa delays—are the same under both the APA and Mandamus Act," so the Court will address the claims together. <u>Akrayi v. U.S. Dep't of State</u>, No. 22-cv-1289 (CRC), 2023 WL 2424600 (D.D.C. Mar. 9, 2023). "To state a claim for unreasonable delay, [a plaintiff] must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the delay was unreasonable[.]" <u>Da Costa v. Immigr. Inv. Program Off.</u>, 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations omitted).

The government contends that Stetsiuk has identified no discrete agency action here. Mot. to Dismiss at 21–25. It points for support to <u>Karimova v. Abate</u>, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), which held that § 555(b) of the APA *alone* was too "general[] and indistinct[]" to establish such a "crystal-clear legal duty" on behalf of the government. <u>Id.</u> at *3–4 (quoting <u>In re Ctr. for Biological Diversity</u>, 53 F.4th 665, 670 (D.C. Cir. 2022)); 2nd Notice of Supp. Auth., ECF No. 11, at 1–4. Stetsiuk, however, also invokes 22 C.F.R. § 41.121(a) as the source of the duty "to either issue or refuse a visa after receiving a properly completed and executed application." Compl. ¶ 23; <u>see</u> <u>Karimova</u>, 2024 WL 3517852 at *3. The Court need not decide whether the INA or its regulations impose this duty because,

---

does not displace the principle that "the doctrine of consular nonreviewability applies to challenges based on substance, not timing." <u>Azeez</u>, 2024 WL 3924565 at *3.

either way, Stetsiuk has not plausibly alleged an unreasonable delay in adjudicating his visa application. See Baygan v. Blinken, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024) (citing Rostamnia v. Blinken, No. 23-cv-1638 (RDM), 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024)). Accordingly, the Court will "assume, without deciding, that the State Department has a non-discretionary, discrete duty to adjudicate [Stetsiuk's] visa application." Azeez, 2024 WL 3924565, at *3; Shabestary, 2024 WL 5118229, at *4.

D. Unreasonably Delay

Finally, the government contends that Stetsiuk has not shown that the processing of his visa has been unreasonably delayed. To evaluate whether the delay in this case is unreasonable, the Court applies the six-factor test established by Telecommunications Research & Action Center v. Federal Communications Commission ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984). Under the TRAC test, courts must balance the following considerations:

1) the time agencies take to make decisions must be governed by a "rule of reason";
2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 80).

"In analyzing a motion to dismiss, courts apply the TRAC factors not to 'determine[e] whether there has been an unreasonable delay,' but to determine if a plaintiff's complaint 'alleged facts sufficient to state a plausible claim for unreasonable administrative delay.'"

Varghese v. Blinken, No. 21-CV-2597 (CRC), 2022 WL 3016741, at *4 (D.D.C. July 29, 2022) (alteration in original) (quoting Jingjing Liu v. Mayorkas, No. 20-CV-654 (CRC), 2021 WL 2115209, at *3 (D.D.C. May 25, 2021)). While Stetsiuk contends that resolving this case at the motion to dismiss stage is inappropriate, Opp'n at 16, "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage." Da Costa, 643 F. Supp. 3d at 12. "If a 'record contains enough facts to evaluate the TRAC factors' at that point, then a Court may appropriately decide to do just that." Id. (quoting Sarlak v. Pompeo, No. 20-CV-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)). Applying the TRAC factors here, the Court finds that the complaint fails to plausibly allege an unreasonable delay. Factors one, two, and four favor the defendants, factor six is neutral, and although factors three and five weigh slightly in Stetsiuk's direction, the other factors outweigh them.

    a.   TRAC Factors One and Two

The Court begins with factors one and two: "(1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable." Giliana, 596 F. Supp. 3d at 20. The first factor is "most important" to the TRAC analysis, In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008), though the two are "typically considered together," Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020).

The parties agree that Congress has established no firm timetable for a consular official to re-adjudicate Stetsiuk's visa application. Mot. to Dismiss at 29; Opp'n at 20.[5] When Congress provides no timetable, courts look to relevant case law to provide a rule of reason. See Sarlak, 2020 WL 3082018, at *6 ("Absent a congressionally supplied yardstick, courts typically turn to

---

[5] Stetsiuk directs the Court to a statutory timeline for the adjudication of applications for immigration benefits, while acknowledging that no similar timetable exists for "visa adjudication," which is what is at issue here. Opp'n at 20.

11

case law as a guide."). In this district, "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." Id. (citations omitted) (collecting cases). And in assessing the length of a delay, the Court "calculate[s] the delay 'from the last Government action to the issuance of the opinion.'" Varghese, 2022 WL 3016741, at *5 (quoting Mahmood v. U.S. Dep't of Homeland Sec., No. 21-CV-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)). Taken together, these factors clearly favor the government.

The 21-month delay in processing Stetsiuk's application since his May 2023 interview falls comfortably within the range that courts in this district have deemed reasonable. See, e.g., Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding 29 months of "administrative processing" not unreasonable); Sheibani v. Garland, No. 23-cv-2773 (TJK), 2024 WL 3043156, at *4 (D.D.C. June 18, 2024) (same for 24 months); Pourabdollah v. Blinken, No. 23-cv-1603 (DLF), 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (20 months); Sharifymoghaddam v. Blinken, No. 23-cv-1472-RCL, 2024 WL 939991, at *5 (D.D.C. Mar. 5, 2024) (15 months). Using this "case law as a guide," then, these two important TRAC factors weigh in the government's favor. Sarlak, 2020 WL 3082018, at *6.

    b. TRAC Factor Four

The fourth TRAC factor also favors the government. The fourth factor examines "the effect of expediting delayed action on agency activities of a higher or competing priority," TRAC, 750 F.2d at 80, and "carries the greatest weight in many cases," Milligan, 502 F. Supp. 3d at 319. In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in TRAC favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Id. at 319

12

(cleaned up) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).

Stetsiuk argues that he should not be "penalized for a systemic lack of agency resources," Opp'n at 22, but he cannot escape the reality that "[c]onsular processing capacity is presently a zero-sum game, so granting [Stetsiuk] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." Lee, 2024 WL 639635, at *6 (quotation marks omitted). Although the impact of "prioritizing one visa application may prove minimal," "the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." Id. (same). And the Court has no basis on which to reorder agency priorities, especially where, as here, "[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." In re Barr Lab'ys, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991); see also Arab v. Blinken, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[D]eference must be given to the State Department's priority-setting and resource-allocation decisions." (collecting cases)).

    c. TRAC Factors Three and Five

TRAC factors three and five—the delay's impact on "human health and welfare" and the "interests prejudiced by delay"— appear to favor Stetsiuk, though he alleges less serious harms than other visa applicants before this Court. TRAC, 750 F.2d at 80. Stetsiuk claims that the processing delay has caused him and his family "significant personal, financial, and emotional hardship." Compl. ¶ 1. Specifically, he alleges that he will lose his place in the MBA program in which he has enrolled if he cannot be physically present at Columbia Business School, though he has not alleged any disruption to his schooling as yet. Id. ¶ 2. His wife has also been forced

to put her "professional and personal aspirations [] on hold."  Id.  The Court appreciates the obstacles the couple faces and encourages the defendants to adjudicate the application once and for all.  But the effects of the delay on Stetsiuk's education and family circumstances do not tilt the overall balance of the relevant factors in his direction.

        d.  TRAC Factor Six

The sixth TRAC factor is neutral because Stetsiuk concedes that "there is no evidence that Defendants have engaged in any improper conduct."  Opp'n at 19.

\* \* \*

After carefully considering the TRAC factors, the Court finds that the complaint does not plausibly allege an unreasonable delay.  Although two TRAC factors slightly favor Stetsiuk, these considerations "are not enough to overcome the other factors that weigh strongly in the Government's favor."  Palakuru, 521 F. Supp. at 53.

## IV.  Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Memorandum Opinion.

**SO ORDERED**.

                                                       CHRISTOPHER R. COOPER
                                                       United States District Judge

Date: February 5, 2024